FILED IN CHAMBERS
U.S.D.C. Atlanta

JAN 12 2006

LUTHER D. THOMAS, Clerk
By: [signature]
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEMARIC E. REED, as Plaintiff
and as Parent and next friend
of HAROLD ERIC REED,

        Plaintiffs,

v.

COBB COUNTY, GEORGIA, and RON
UNDERWOOD,

        Defendants.

CIVIL ACTION

NO. 1:04-CV-2946-RLV

O R D E R

This is a matter brought pursuant to 42 U.S.C. § 1983 in which the plaintiffs allege that the defendants violated their civil rights; the complaint also asserts state law claims for defamation and negligent failure to train. Pending before the court are (1) the plaintiffs' renewed motion for summary judgment [Doc. No. 27], (2) the defendants' motion for summary judgment [Doc. No. 36], (3) the defendants' motion for leave to exceed the page limitations imposed by the court's Local Rules [Doc. No. 37], (4) the plaintiffs' motion for sanctions [Doc. No. 41], and (5) the plaintiffs' second motion to grant their motion for summary judgment as being unopposed [Doc. No. 43].

I. FACTUAL BACKGROUND

The salient facts in this case are not in dispute. In August 2002, Detective Ron Underwood, who has worked for the Cobb County

Police Department since June 1989, was assigned the investigation and follow-up of several criminal cases. Harold Eric Reed's name first came to his attention when he was in the early stages of investigating several burglaries and various thefts at Chimney Hills Apartments. In this case, a resident of the complex told police officers that Mr. Reed attempted to sell him a VCR, which Mr. Reed said he had just stolen from one of the apartments. By the time Detective Underwood received this news, Mr. Reed and his mother had moved from this complex to Woodchase Village Apartments.

Detective Underwood was assigned to investigate several burglaries, entering automobiles, and various thefts at Woodchase Village Apartments, but by the time he had been assigned these investigations, the Reeds had moved from this complex, and their whereabouts was unknown.

On March 4, 2003, while investigating the various cases at Woodchase Village Apartments, Detective Underwood tried to talk to several people inside the complex. The first person ran from Detective Underwood but was soon apprehended. The person was arrested on a state criminal arrest warrant. Shortly thereafter, Detective Underwood approached three other individuals; one of these individuals had an outstanding state criminal arrest warrant, and the other two threw a suspected crack cocaine pipe under a nearby staircase. Detective Underwood arrested two of these

individuals and, at the request of the apartment management, gave the other a criminal trespass warning and escorted him off the property.

Soon after these arrests had been made, Detective Underwood was approached by the maintenance men at the complex, Nick Bradley and Daniel Woodson, and was told that if he wanted to find the "real criminal" in the complex, he should investigate the residents at 6800 Woodchase Village Lane, Apartment F.  The maintenance men stated that there was a lot of pedestrian traffic at this unit.  When asked if Mr. Reed was staying at that location, the maintenance men said that he was.  Mr. Woodson stated that he was trying to mentor Mr. Reed because he had no one else to help him.  Detective Underwood told Mr. Woodson to have Mr. Reed contact him if he saw Mr. Reed in the near future; at that time, Detective Underwood gave Mr. Woodson his pager number.

On March 5, 2003, Detective Underwood along with other police officers attempted to make contact with the residents of Apartment F.  When they approached the front door, they noticed that the door had extensive damage along the door jamb, near the deadbolt lock.  When Detective Underwood knocked on the door, the door opened.  The officers announced themselves as police officers but received no answer from inside the apartment.  Once inside the apartment, they noticed that the gas fireplace was on and that there was extensive

smoke damage on the wall directly above the fireplace. As they secured the apartment, the officers found paperwork belonging to a recent burglary victim.

Based upon information obtained during this initial search, Detective Underwood secured a state search warrant. This warrant was executed later in the day, and the officers recovered three large bags of stolen merchandise, including several rounds of ammunition. A previous burglary victim had reported the theft of several handguns, assault rifles, and ammunition. However, no guns were found in the apartment.

Later that day, Detective Underwood was told that Ms. Carolyn Hampton had more information about two incidents involving her apartment, which was in the same complex. The first incident occurred on February 21, 2003. At that time, Ms Hampton was working alone on her computer. She looked up and noticed a young, black male at the end of her hallway, who was walking toward her room. She immediately got up and asked what he was doing in her apartment and how he had gotten in. He replied that he was in the wrong apartment and immediately left. At this point, Ms. Hampton called the police and made a police report. She did not recognize the man, but she later described him to her daughter.

Her daughter later showed her a Wheeler High School yearbook, and Ms. Hampton recognized the photos of Mr. Reed in the yearbook.

A few days later, on February 27, Ms. Hampton's daughter came home from school and discovered that the apartment had been robbed. Another police report was made at that time.

On March 5, Detective Underwood met with Ms. Hampton. She showed Detective Underwood the school yearbook and identified Mr. Reed as the person who had been in her apartment on February 21.[1] At that point, Detective Underwood checked Mr. Reed on all law enforcement databases and learned that he was a suspect in several Cobb County Police Department cases.

Later that day, Detective Underwood appeared before a Cobb County Magistrate and provided both written and sworn testimony regarding Mr. Reed, including the eyewitness testimony of Ms. Hampton regarding the February 21 incident. The Magistrate issued an arrest warrant for Mr. Reed. The warrant erroneously listed "March 21, 2003" as the date on which the incident occurred, rather than the correct date, February 21, 2003. It is from this scrivener's error, which was corrected the next day, that the

---

[1] The plaintiffs point out that the police incident made on February 21 described the intruder as being 18-20, six feet two inches tall, and weighing 210 pounds. Mr. Reed at the time was 16 years old, about five feet five inches tall, and weighed approximately 140 pounds. Despite these differences, it is uncontested that Ms. Hampton unambiguously identified *to Detective Underwood on March 5* Mr. Reed's yearbook picture as being the person who had entered her apartment. With respect to whether Detective Underwood had probable cause (or arguable probable cause) this latter specific identification is sufficient to offset any earlier, different description.

plaintiffs' strident characterizations of "void" or "unlawful" warrant flow.

On the next day, Detective Underwood learned that a Cobb County police officer had stopped a vehicle at Bentley Ridge Condominiums and had arrested the driver on outstanding state criminal warrants; the passenger in the vehicle was identified as "Harold Eric Reed." The incident report showed a different address from the Woodchase Village address; instead, it showed Mr. Reed as living at 2383 Akers Mill Road, Apartment T-15. Detective Underwood met with the arresting officer to discuss the case. Detective Underwood subsequently learned that 2383 Akers Mill Road was the address for Veranda Apartments.

On March 6, Detective Underwood went to Veranda Apartments and talked with three managers. He confirmed through the complex's computer system that the Reeds lived there. Although the plaintiffs allege that Detective Underwood told the managers that the plaintiffs were "not the kind of scum you want living on your property," he denies making this statement. As he was leaving the management office, he received a page from Mr. Reed. Mr. Reed stated that he wanted to talk with investigators and asked to meet at a neighboring complex. Detective Underwood asked Mr. Reed if he was at home and if he still lived with his mother. Mr. Reed

replied that he did. Detective Underwood did not tell Mr. Reed that he was already at the Veranda complex.

By this time, uniform officers had arrived at the scene. The officers and Detective Underwood agreed that they would try to execute the outstanding arrest warrant on Mr. Reed before he had an opportunity to leave the apartment. They went to the apartment, and Detective Underwood knocked on the door but received no answer. They announced themselves as Cobb County police officers and stated that they had an arrest warrant for Harold Eric Reed.

Since Mr. Reed had just told Detective Underwood that he was at home, the detective yelled that they were police officers and asked that the door be opened. The officers noticed movement inside the apartment and told Mr. Reed that if he did not open the door, management would be called.

Because ammunition, but not the stolen guns, had been recovered from the Woodchase Village apartment where Mr. Reed had been seen on earlier occasions, the officers reasonably believed that it was necessary to force entrance into the apartment. Detective Underwood attempted to gain entrance through using a key he had earlier obtained from the management office, the door was secured by a chain lock, and the door opened only a few inches. Detective Underwood saw a black male standing in the front room and recognized Mr. Reed from his yearbook picture. At that point,

Detective Reed kicked the front door twice, and the door opened. Mr. Reed was arrested without further incident.

Soon thereafter, Ms. Reed came to the apartment. She accompanied the officers and her son to a police precinct, where she informed the officers that Mr. Reed was a juvenile. Mr. Reed was then released to the custody of his mother, after she was issued a juvenile complaint (which had the correct date of February 21, 2003, on it). The juvenile charges were still pending at the time the instant action was filed.

## II. LEGAL DISCUSSION

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear and undisputed that Detective Underwood was acting within the course and scope of his discretionary authority when he took Mr. Reed into custody. "Once the defendant establishes that he was acting within his

discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id.

The United States Supreme Court has set forth a two part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002); see also Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard, 311 F.3d at 1346 quoting Saucier, 533 U.S. at 201. Thus, the court must first analyze whether Detective Underwood's conduct, taken in the light most favorable to the plaintiffs, violated their constitutional rights.

The plaintiffs' allegations that their constitutional rights to be free from unlawful search and seizure, not to have their privacy invaded, and not to have their other "rights, privileges, or immunities" violated all stem from Detective Underwood's

execution of the arrest warrant on Mr. Reed on March 6, 2003.[2] In order to arrest or to obtain an arrest warrant, an officer need to demonstrate probable cause for the arrest. However, in the context of qualified immunity from a section 1983 claim, the police officer need not have actual probable cause but needs only to have "arguable probable cause." Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999). "Because only arguable probable cause is needed, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

The fact that Ms. Hampton positively identified *to Detective Underwood* Mr. Reed as the person who had unlawfully been in her apartment on February 21, 2003, gave Detective Underwood arguable probable cause to seek an arrest warrant for Mr. Reed and to later execute that warrant. The incorrect reference to March 21, 2003, on the warrant, which the plaintiffs emphasize, did not invalidate the warrant, since it was clearly a scrivener's error and was corrected as soon as the error was noticed, the very next day. This typographical error did not diminish Detective Underwood's

---

[2] The plaintiffs argue that the search of the apartment was illegal, since Detective Underwood did not have a valid search warrant for that address. This argument is without merit, since the "search" (which consisted merely of the officers entering the apartment to execute the arrest warrant) was made incident to the arrest.

10

arguable probable cause for obtaining and executing the arrest warrant.

This court concludes that none of the actions of Detective Underwood constituted a violation of any constitutional right of the plaintiffs and that, consequently, he is entitled to qualified immunity.

The plaintiffs' section 1983 claims against Cobb County are based on the actions of Detective Underwood and the County's alleged failure to properly train and supervise Detective Underwood. Since the court has concluded that Detective Underwood did not act improperly, it necessarily follows that the County was not negligent in its training and supervision of Detective Underwood.

To the extent that the plaintiffs' complaint asserts state claims against the defendants, those claims are barred since Detective Underwood has official immunity against those claims.[3] Art. I, § II, ¶ IX(d) of the Georgia Constitution provides for official immunity:

---

[3] The complaint asserts state law claims against Detective Underwood. Because of the prolix language used in the complaint, it is difficult to tell if these claims are also asserted against Cobb County. To the extent that there are any allegations against Cobb County, those claims would seem to be based on respondeat superior or principal/agent principles. However, state law claims against the County are barred by sovereign immunity.

11

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

In Merrow v. Hawkins, 266 Ga. 390 (1996), the Georgia Supreme Court held that in the context of official immunity, "actual malice" requires a deliberate intention to do wrong. "Actual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." Adams v. Hazelwood, 271 Ga. 414, 415 (1999).

This immunity is available to public officials acting in the course of their discretionary capacities. Gilbert v. Richardson, 264 Ga. 744 (1994). This court holds that Detective Underwood was performing an official discretionary function when he obtained and executed the arrest warrant for Mr. Reed.

Even assuming that Detective Underwood made the defamatory remarks alleged by the plaintiffs, this court finds that the plaintiffs have failed to show that they were made with actual malice. Additionally, to the extent that the plaintiffs' complaint asserts state claims for negligence, intentional infliction of emotional distress, or invasion of privacy, the court holds that the defendants are entitled to official immunity since the plaintiffs have presented no evidence that the actions were taken with actual malice.

For the foregoing reasons, the defendants' motion for summary judgment [Doc. No. 36] is GRANTED; the defendants' motion for leave to exceed the page limitations imposed by the court's Local Rules [Doc. No. 37] is GRANTED; the plaintiffs' renewed motion for summary judgment [Doc. No. 27] is DENIED; the plaintiffs' second motion to grant their motion for summary judgment as being unopposed [Doc. No. 43] is DENIED; since the court finds no basis to grant sanctions for the conduct of the defendants, the plaintiffs' motion for sanctions [Doc. No. 41] is DENIED.

SO ORDERED, this 12th day of January, 2006.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge